Mr. Richard Rozansky City Manager City of Winter Springs 1126 East State Road 434 Winter Springs, Florida 32708
Dear Mr. Rozansky:
This is in response to your request for an Attorney General's Opinion on substantially the following question:
 IS THE CITY OF WINTER SPRINGS AUTHORIZED TO REQUIRE A CERTIFIED CONTRACTOR TO PROVIDE THE CITY WITH A SURETY BOND FOR THE PROTECTION OF CITY PROPERTY AS A PREREQUISITE TO ISSUANCE OF A BUILDING PERMIT?
Your letter states that the surety bond under consideration "is for the protection of . . . water/sewer lines, swales, drainage pipes, sidewalks, curbs, streets, etc." Your letter does not identify the specific type of contractor involved in your inquiry except to mention the construction of swimming pools. I would note that this type of construction is not restricted to one group of certified contractors as defined in s. 489.105, F.S. (1986 Supp.). See, s. 489.105(3)(a), (j), and (k), F.S. (1986 Supp.), defining respectively a "[g]eneral contractor" as one whose services are unlimited regarding the type of contracting work he can do, a "[c]ommercial pool contractor" as a contractor whose work involves but is not limited to the construction of public or private swimming pools, and a "[r]esidential pool contractor" as one whose scope of work involves but is not limited to the construction of residential swimming pools. In the absence of any specific direction, my comments will, of necessity, be of a general nature rather than directed to a specific type of certified contractor.
As provided in s. 2(b), Art. VIII, State Const., and implemented in s. 166.021, F.S., municipalities possess the governmental, corporate, and proprietary powers to enable them "to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." Section166.021(1), F.S. Certain matters are placed outside the scope of municipal legislative action by s. 166.021(3), F.S., including, in subsection (c) thereof, "[a]ny subject expressly preempted to state or county government by the constitution or by general law. . . ." Cf., s. 166.221, F.S., which provides that a municipality may levy certain business, professional, and occupational regulatory fees when such regulation has not been preempted by the state or a county pursuant to a county charter.
State regulation of the field of construction contracting is codified in Part I, Ch. 489, F.S. (1986 Supp.). And see, s.489.101, F.S., stating that the Legislature recognizes the significance of the construction and home improvement industries and that "it is necessary in the interest of the public health, safety, and welfare to regulate the construction industry" as significant harm to the public may occur "when incompetent or dishonest contractors provide unsafe, unstable, or short-lived products or services."
Part I of Ch. 489, F.S. (1986 Supp.), regulates the construction industry by requiring contractors to be licensed by the Department of Professional Regulation as a prerequisite to practicing in Florida. Section 489.113(2), F.S. (1986 Supp.). To be licensed a person must be either certified as a contractor or registered as a contractor. Section 489.113(1), F.S. (1986 Supp.). A contractor, for purposes of Ch. 489, F.S. (1986 Supp.), is defined in pertinent part as
 [t]he person who is qualified for and responsible for the entire project contracted for and means, except as exempted in this act, the person who, for compensation, undertakes to, submits a bid to, or does himself or by others construct, repair, alter, remodel, add to, subtract from, or improve any building or structure, including related improvements to real estate, for others or for resale to others.
Section 489.105(3), F.S. (1986 Supp.). And see, s. 489.105(a)-(c), F.S. (1986 Supp.), defining respectively the terms "[g]eneral contractor," "[b]uilding contractor," and "[r]esidential contractor"; and s. 489.105(3)(d)-(m), F.S. (1986 Supp.), including definitions for, inter alia, (j) "[c]ommercial pool contractor," (k) "[r]esidential pool contractor," and (m) "[p]lumbing contractor."
A certified contractor (who may engage in contracting on a statewide basis) must establish his competency and other qualifications for certification, which requires the passing of the appropriate examination administered by the Department of Professional Regulation. Section 489.113(1), F.S. (1986 Supp.). Compare, the requirements in s. 489.113(1), supra, regarding a certified contractor, to those imposed on a registered contractor (who may engage in contracting only in the counties, municipalities, or development districts where he or she has complied with local licensing requirements and only for the type of work covered by the registration) by s. 489.117, F.S., which states that to be initially registered an applicant shall submit the required fee and file evidence of holding a current local occupational license from a municipality, county, or development district for the type of work desired and evidence of successful compliance with local examination and licensing requirements; no standard examination administered by the Department of Professional Regulation is required for registration. Further, s.489.115(4), F.S., requires that "[a]s a prerequisite to issuance of a certificate, the applicant [for certification] shall submit satisfactory evidence that he has obtained public liability and property damage insurance for the safety and welfare of the public in amounts determined by rule of the board. . . ." See, Rule 21E-15.003, F.A.C., which sets forth the amount of liability and property damage insurance required by the board as a prerequisite to the issuance or renewal of specific contractors' certificates. As provided in part by s. 489.113(4), F.S. (1986 Supp.):
 When a certificateholder desires to engage in contracting in any area of the state, as a prerequisite therefor, he shall be required only to exhibit to the local building official, tax collector, or other person in charge of the issuance of licenses and building permits in the area evidence of holding a current certificate and to pay the fee for the occupational license and building permit required of other persons. (e.s.)
The surety bond you describe appears to be in the nature of a bond to recompense the municipality for damages done to municipal property during the course of the construction project involved or a financial guarantee of reparation for such damage. The requirement contained in s. 489.115(4), supra, that an applicant submit evidence of public liability insurance and property damage insurance as a prerequisite to certification when read with the provision of s. 489.113(4), supra, that "[w]hen a certificateholder desires to engage in contracting in any area of the state, [the certified contractor] shall be required only to exhibit . . . evidence of holding a current certificate and to pay the fee for the occupational license and building permit required of other persons" (e.s.), lead me to the conclusion that this area has been preempted to exclusive regulation by the state. And see, AGO 73-399 wherein it is stated that a municipality may not require certified contractors to show evidence of liability insurance or to post a performance bond but that, pursuant to a proper nondiscriminatory regulatory ordinance, these requirements may be imposed on registered contractors as prerequisites to the issuance of a local regulatory license or certificate of competency; and AGO 70-48. Cf., AGO 73-27 ("The language of [what is now s. 489.113(4)] makes it abundantly clear that the Legislature intended that the presentment of a certificate issued by the board accompanied by the proper fee for the occupational license and permit would be the only additional requirement for engaging in business in any part of the state"). See also, Tribune Company v. Cannella, 458 So.2d 1075, 1077 (Fla. 1984) (under the preemption doctrine a subject is preempted by a senior legislative body from action by a junior legislative body if the senior legislative body's scheme of regulation of the subject is pervasive and if further regulation of the subject by the junior legislative body would present a danger or conflict with that pervasive regulatory scheme).
It is clear that municipal ordinances are inferior and subordinate to state law. Therefore an ordinance may not conflict with any controlling provision of a state statute. If any doubt exists as to the degree of power attempted to be exercised which may affect the operation of a state statute, the doubt must be resolved in favor of the statute and against the ordinance. City of Miami Beach v. Rocio Corporation, 404 So.2d 1066 (3 D.C.A.Fla., 1981), pet. for rev. den., 408 So.2d 1092 (Fla. 1981); Rinzler v. Carson,262 So.2d 661 (Fla. 1972); AGO's 86-54, 79-71. Cf., Tribune Company v. Cannella, supra.
Therefore, as it appears that the state has preempted regulation of the area of public liability and property damage insurance for certified contractors and has specifically determined the prerequisites for such a contractor to engage in contracting in any area of the state, no municipal regulation on this point is authorized.
In sum, it is my opinion that until legislatively or judicially determined otherwise, the City of Winter Springs is not authorized to require a certified contractor to provide the city with a surety bond for the protection of city property as a prerequisite to issuance of a building permit.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General